## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

LARRY R. FALKINS                                    CIVIL ACTION

VERSUS                                              NO.  11-1984

(WARDEN) ROBERT TANNER                              SECTION "C"(2)

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was recently reassigned to me. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.     FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Larry R. Falkins, is a convicted inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center.[2]  Falkins was charged by bill of information in Jefferson Parish on October 20, 2005, with the attempted first degree murder of a police officer, Deputy Stanley Brown.

The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> [. . .] On September 1, 2005, in the immediate aftermath of Hurricane Katrina, members of the Jefferson Parish Sheriff's Office responded to reports of looting.  Deputy Stanley Brown, assisted by Deputy Andino, arrived at the Dollar Store on Airline Highway, Metairie, Louisiana, where they found large numbers of people inside the store.  A female on the scene informed officers that guns were being stolen from the Cash America Pawn Shop next door.
>
> In responding to this tip, the police found guns inside the doorway but no suspects inside.  The police inventoried the guns and began to load them in police cars.  Officers received a tip that the people who had broken into Cash America and stolen guns had left in a maroon Chevy, which was parked on Simon Street with a flat tire.  The tipster also stated that one of the subjects, wearing jeans, a white shirt, and a black cap, was changing the tire.  Deputy Brown drove to Simon Street where he saw the car and the suspect, whom he identified in court as the defendant.
>
> As the deputy pulled up behind, the defendant began to run toward the railroad tracks.  Deputy Brown grabbed his shotgun for his safety and pursued the defendant down the tracks.  Deputy Brown testified that, "Mr. Falkins turned with his head and his right hand and had a black in color pistol and pointed it in my direction."  Brown saw the muzzle flash from the defendant's weapon and returned fire.  Brown fired his shotgun at the

_____

[2]Rec. Doc. No. 1.

defendant three times. On the third shot, the defendant fell. He popped up again, however, and ducked into the woods near the tracks.

Deputy Abraham Andino also made a positive identification of the defendant as the shooter in court. He described the scene at the shopping center and the discovery of the cache of stolen guns. He was in pursuit when the defendant fired at police. After the second shot, he realized that the defendant was shooting at the officers. The defendant ran out of sight. When the defendant turned back and fired his pistol, he was 35 to 50 yards away from Officer Brown.

Lieutenant Karl Walsdorf also described chasing the defendant on the railroad tracks. When the police got to the top of the tracks, the defendant turned and fired on the officers. When Walsdorf heard the first shot, he crouched down and heard the bullet whiz over his head. The defendant fired the first shots. There was no place to take cover and Walsdorf was afraid for his life. Walsdorf had no doubt that the man sitting in the courtroom was the same man who had shot at the officers.

The officers who testified agreed that the defendant was not captured in the chase. After the defendant eluded police, a "perimeter" was set up with many units, including K-9s and helicopters, involved in searching for the defendant. The handgun was never recovered.

Shortly after the exchange of gunfire and the chase down the tracks, the police received information that a black male had presented himself at the Kenner Regional Hospital with a gunshot wound. Roughly an hour after the shooting, Deputy Andino made a positive identification of the defendant as the shooter.

Major Victor Amstutz testified that he learned that a subject had presented himself at Kenner Regional with a gunshot wound. Amstutz interviewed the subject who stated that he had been walking on West Metairie near North Sibley when he was shot from a car. Amstutz also spoke with the two men who brought the subject to the hospital. These men contradicted the defendant's story. The three officers who had been shot at, took a look at the subject and made positive identifications of him as the shooter. At Amstutz' request, a Kenner policeman conducted a gunshot residue test.

An Instant Shooter Identification Kit was performed on both of the defendant's hands. His right hand tested positive for the presence of gunpowder residue, while his left hand did not. The test revealed a strong

presumptive positive that the defendant's right hand was "at or near a gunfire or gunpowder source."

The defendant exercised his right to testify at trial. He denied participating in the robbery of the pawn shop. He also denied driving a car, changing a tire, or shooting a gun. He testified that he began to run on the train tracks but was not concerned until he heard an officer say that he had a gun. He denied having a gun, however, and denied firing at the police officers. He acknowledged that he was struck in the arm by shots from a police officer. The defendant stated that he ran into a person he knew whom he asked to take him to the hospital. He denied having told Major Amstutz that he was the victim of a drive-by shooting. He concluded that the police were making up the account of his statement.

State v. Falkins, 9 So.3d 190, 191-92 (La. App. 5th Cir. 2009); State Record Volume 1 of 4, Louisiana Fifth Circuit Court of Appeal Opinion, 08-KA-745, January 27, 2009.

Falkins was tried before a jury on March 12 and 17, 2008, and was found guilty as charged.[3] The state trial court sentenced Falkins on June 3, 2008, to serve 40 years in prison without benefit of parole, probation or suspension of sentence.[4] At a hearing on July 22, 2008, the court also denied Falkins's motion to reconsider the sentence.[5]

On direct appeal, Falkins's counsel argued that the trial court erred in denying the defense motion to reconsider the sentence, because the sentence was unconstitutionally

---

[3]St. Rec. Vol. 1 of 4, Trial Minutes, 3/12/08; Trial Minutes, 3/17/08; Jury Verdict, 3/17/08; St. Rec. Vol. 2 of 4, Trial Transcript, 3/12/08; St. Rec. Vol. 3 of 4, Trial Transcript, 3/17/08.

[4]St. Rec. Vol. 1 of 4, Sentencing Minutes, 6/3/08; St. Rec. Vol. 3 of 4, Sentencing Transcript, 6/3/08.

[5]St. Rec. Vol. 1 of 4, Minute Entry, 7/22/08; Motion to Reconsider, 6/5/08; St. Rec. Vol. 3 of 4, Motion Hearing Transcript, 7/22/08.

excessive.[6]  Counsel also requested that the court conduct a review for errors patent on the face of the record.  On January 27, 2009, the Louisiana Fifth Circuit affirmed the conviction and sentence, finding no merit to specifically asserted error and no other error on review of the record.[7]

Falkins's conviction became final 30 days later, on February 26, 2009, because he did not seek rehearing or file for review in the Louisiana Supreme Court.  Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5the Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

In January 2010, Falkins submitted an application for post-conviction relief to the state trial court in which he asserted two grounds for relief:[8] (1) He was denied his Sixth and Fourteenth Amendment rights, because hearsay testimony was allowed at trial. (2) He was denied his Sixth and Fourteenth Amendment rights, because inconclusive evidence was admitted at trial.  On January 27, 2010, the state trial court denied the

---

[6]St. Rec. Vol. 3 of 4, Appeal Brief, 08-KA-10/17/08.

[7]State v. Falkins, 9 So.3d at 190; St. Rec. Vol. 1 of 4, 5th Cir. Opinion, 08-KA-745, 1/27/09.

[8]St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, 1/20/10.  Falkins failed to sign and date the application.  The proposed signature date on the attached orders is "2010."  The pleadings therefore suggest that Falkins did not submit the pleadings for filing until on or after January 1, 2010. The record provides no adequate basis on which to determine when the pleadings may have been submitted to prison officials for mailing to the court.

application, finding the claims barred from review under La. Code Crim. P. art. 930.4(B) and (C) for failure to raise them prior to or on appeal.[9]

On March 19, 2010, the Louisiana Fifth Circuit denied relief on Falkins's writ application.[10]   The court found the claims barred pursuant to La. Code Crim. P. art. 930.4(C), because Falkins inexcusably failed to raise the claims on appeal.   The Louisiana Supreme Court denied Falkins's subsequent writ application without stated reasons.[11]

II.   FEDERAL HABEAS PETITION

On August 15, 2011, the clerk of this court filed Falkins's petition for federal habeas corpus relief in which he asserts two grounds for relief:[12] (1) He was denied his Sixth and Fourteenth Amendment rights, because hearsay testimony was allowed at trial. (2) He was denied his Sixth and Fourteenth Amendment rights, because inconclusive evidence was admitted at trial.

---

[9]St. Rec. Vol. 1 of 4, Trial Court Order, 1/27/10.

[10]St. Rec. Vol. 1 of 4, 5th Cir. Order, 10-KH-131, 3/19/10.

[11]State ex rel. Falkins v. State, 62 So.3d 77 (La. 2011); St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Order, 2010-KH-0939, 4/25/11; La. S. Ct. Writ Application, 10-KH-939, 4/23/10 (dated 4/14/10); St. Rec. Vol. 4 of 4, La. S. Ct. Letter, 2010-KH-939, 4/23/10 (showing postal meter 4/16/10).

[12]Rec. Doc. No. 1-1, p.5.

The State filed a response in opposition to Falkins's petition, alleging that the petition was not timely filed and that Falkins's claims are in procedural default and technically unexhausted.[13]

III.   GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[14] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Falkins's petition, which, for reasons discussed below, is deemed filed in this federal court on or before June 20, 2011.[15]

_____

[13]Rec. Doc. No. 9.

[14]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[15]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Falkins's petition was filed by the clerk of this court on August 15, 2011, when pauper status was granted. Falkins failed to date his signature on the petition and to sign or date the memorandum in support. The envelope in which his pleadings were first received is postal metered June 20, 2011. The record does not provide me with adequate information to determine when the pleadings may have been submitted to the prison officials for mailing.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State alleges that Falkins's petition is untimely and that both of his claims are in procedural default.  Upon review of the record, I find that Falkins failed to date (or sign) the relevant state post-conviction pleadings, or the federal petition submitted to this court.  The record does not contain prison mail logs to establish when Falkins may have submitted these pleadings to prison officials for mailing to the courts for me properly to apply the relevant mailbox rules.  These failings do not allow me to evaluate the State's limitations defense on the record as presented.  However, I find that Falkins's claims are clearly in procedural default and must be dismissed with prejudice for that reason.

IV.    PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S.

255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  <u>Amos</u>, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

Falkins raised his two federal claims on post-conviction review in the Louisiana courts.  The record demonstrates that the last reasoned decision was that of the Louisiana Fifth Circuit, which barred review of the claim pursuant to La. Code Crim. P. art. 930.4(C) for his inexcusable failure to raise the claims on direct appeal.  This procedural denial was the last reasoned decision on the issue.  <u>Ylst</u>, 501 U.S. at 802.

A.    <u>INDEPENDENT AND ADEQUATE</u>

For the foregoing state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is

independent of federal law and rests solely on a state procedural bar.  <u>Amos</u>, 61 F.3d at

338.  To be "adequate," the state procedural rule must be strictly or regularly followed

and evenhandedly applied to the majority of similar cases.  <u>Walker v. Martin</u>, __U.S.__,

131 S.Ct. 1120, 1127 (2011); <u>Glover</u>, 128 F.3d at 902.  A state procedural rule "can be

'firmly established' and 'regularly followed,' - even if the appropriate exercise of

discretion may permit consideration of a federal claim in some cases but not others."

<u>Beard v. Kindler</u>, __U.S.__, 130 S. Ct. 612, 618 (2009).  The question of the adequacy

of a state procedural bar is itself a federal question.  <u>Beard</u>, 130 S. Ct. at 617 (citing <u>Lee

v. Kemna</u>, 534 U.S. 362, 375 (2002)).

   La. Code Crim. P. art. 930.4(C) is clearly an independent state law procedural

basis for denying review of an untimely raised post-conviction claim.  <u>Bennett v.

Whitley</u>, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis

to bar federal review); <u>Washington v. Cain</u>, 2000 WL 863980 (E.D. La. June 27, 2000)

(same).  The state court in this case expressly ruled that Falkins was not entitled to relief

on his post-conviction claims, because they were not raised on direct appeal.  The state

procedural bar is presumptively adequate when the state court expressly relies on it in

deciding not to review a claim for collateral relief.  <u>Glover</u>, 128 F.3d at 902.

   I find, therefore, that the bar imposed by the state court was both independent and

adequate to bar federal review of Falkins's claims in this court.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excused from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." <u>Id.</u> (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. <u>Id</u>. at 486.

In this case, petitioner has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. My review of the record does not support a finding that any factor external to the defense prevented him from raising these claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hogue v. Johnson</u>, 131 F.3d

11

466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

C.     FUNDAMENTAL MISCARRIAGE OF JUSTICE

Falkins may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

12

Falkins provides no indication, and the record contains nothing that suggests, his actual innocence on the underlying conviction.  His claims address alleged procedural failings in the underlying criminal proceeding, not his actual innocence.  He otherwise presents no evidence or argument of innocence that was not already presented to and resolved against him by the jury and the state courts.

For these reasons, Falkins has failed to overcome the procedural bar to his claims. His claims must be dismissed with prejudice for that reason.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Larry R. Falkins for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[16]

          New Orleans, Louisiana, this ___11th___ day of October, 2011.

                              JOSEPH C. WILKINSON, JR.
                        UNITED STATES MAGISTRATE JUDGE

---

[16]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

14